Good morning your honors, counsel. I'm Anne-Marie Schwartz and I represent Juan Salinas Bautista and I'd like to reserve three minutes for rebuttal. I'd first like to let the court know that I take this matter very seriously and I have the utmost respect for the tribunal. There are two issues that I'm going to talk about during argument today. I'm going to rest on the brief for the others unless the court has further questions and those are whether or not the practice of post-stating an affidavit in this case violates Title III and whether or not in this case the false statements and omissions rendered the wiretap unnecessary. The standard of review for the court is de novo with respect to a full and complete statement of facts and it's an abuse of discretion with respect to the necessity analysis. I'd like to begin by letting the court know that in the reply brief... Let me take up what you just said. The standard of review is what? It's de novo with respect to the full and complete statement of facts analysis and it's abuse of discretion for necessity. Okay. The affidavit in this case was actually finalized on or after February 20th. The responsive brief at page 40 indicated that it was finalized about February 18th or so but I wanted to clarify that for the court. Ms. Schwartz, before you go on down this line, we don't need to decide whether the government can quote-unquote post-state unless what wasn't included is material. Is that correct? That's correct, Your Honor. And I will go on to the materiality of the statements. So how is it material that I take it that the materiality claim goes to not disclosing that CI-2 on a trip to the detail shop was introduced to Nikola? Right? Yes, that is true. That was a material post-state. So why is that material? Because it doesn't in any shape, form or fashion show that CI-2 was worming its way into the inner circle of this operation. Yes, Your Honor. It's material under the United States v. Ippolito and its progeny. And under those cases, the standard is whether or not the confidential informant had the potential to penetrate the organization. And in this case It doesn't show any potential. It just shows that a fortuitous, casual encounter where the guy he was dealing with's wife shows up and as a matter of courtesy, he gets introduced to her and that's the end of that. It shows potential because at that meeting, Piper talked about his supplier. And the CI had already been introduced to the supplier. So he had the potential to identify the supplier and be introduced to him. That shows that he had the potential. Why does he have that potential? The first one certainly didn't have the potential. I'm sorry, the first one what? The first confidential informant was a lot further into it than a mere introduction and he couldn't break the family chain. Are you talking about confidential informant number two? Yes. Well, he could. The problem is that the government chose not to use him to follow up on that opportunity. And what we see here is that the pattern and practice of the government using CI2 was to make sure that CI2 always followed up with Piper. And that was the pattern and practice during this relationship and they chose not to do that. That doesn't mean he didn't have the potential to identify the supplier. He did. And he was the only individual in this investigation who was given that opportunity. And under United States versus Simpson... Let me stop you just a minute. As I understand it, the only real issue we have for a de novo is whether this particular encounter and the judge knowing it was material. Because if we find it not being material, then the judge has discretion to do whatever the judge wanted to do in this particular matter, correct? That's correct. The materiality... Because we're really talking about whether this was a full and complete statement. Actually, your honor, the analysis does actually go to necessity. Because if you look at United States versus Blackmun, they don't analyze the full and complete statement analysis. They analyze the false statements and omissions under the necessity determination. And so did United States versus Blackmun. So when you're talking about the confidential informant and the omissions and misstatements regarding that informant's ability to penetrate the organization, that goes to the necessity analysis. Now, the material statements regarding the money laundering, those were also material omissions. And that's because the district court, or the issuing court in this case, relied on the government's assertion that it could not find evidence of the locations where Piper laundered his drug proceeds, as well as the movement and concealment of criminally derived proceeds. And we know that as early as October 26th, the confidential informant was able to uncover the location of the drug proceeds, which was Western Union and Federal Express. Similarly, they heard over the wire on February 19th and 20th that the co-conspirators laundered their proceeds through pawn shops and Piper's bank accounts. Therefore, those omissions were also material. You know, I'd like to tell the court that this was a very serious false statement and omission, because not only did the issuing court rely on it, but the government specifically relied on the false statements in order to determine that the wiretap was not necessary. And the government never updated the affidavit. It never updated the affidavit during the initial application for the wiretap, nor did it update the affidavit during the district court proceedings. Would the court like me to address whether or not the statute was violated by this pattern in practice? I don't need you to address it. Your Honor? Okay. Thank you. If we go on to the Franks issue, the court erred in not ruling on Franks and giving the defendant the hearing on the Franks issue. There was a substantial... What is my standard on this? The standard is de novo. It's de novo, but the factual finding is really for clear error, isn't it? That is correct. And so the district court's factual finding in this situation, including whether there was intentional or reckless false statement and whether those statements were It is, but the conclusion of law is not clear error. And so that's de novo. I can understand that, but I'm just trying to think about the facts now the district court had in front of it in determining whether it needed a Franks hearing and then trying to apply that. Well, the district court had 191 pages of ATF reports. And the district court... Didn't you really say to the district court in your reply brief that you could not even establish whether there was omissions because the information was solely in the hands of the government and then you gave the court 191 pages of reports? Well, actually... I mean, it's hard for me to suggest when your reply brief, which I because the information was in the hands of the government and then throw the court 191 pages of report that somehow the court would err. Well, it is actually a little bit confusing because at the hearing, the defense counsel indicated that the judge was not given the full story and was misled as to what the or not that is sufficient for a Franks hearing. And we now know that that was borne out by the record because the judge was not given the full story about what they did and did not do. If in fact these are mere omissions, but not false statements, and I appreciate that your argument would like to make them the intentional and reckless conduct just amount to speculation based on this record? Well, that is a question before the court. However, under United States vs. Cheshire, if the government admits to a false statement, it does satisfy the intentional and reckless prong. And if the false statement is made on stale information, then the statement is material. And we have a situation here where the government in its brief did admit that the statement was false. So that is an admission made by the government. And we now know that the falsity of the statement was based on stale information. So therefore, your intentional prong has been satisfied, as well as the materiality of the statements. And if the court doesn't have further questions, I will reserve my time for rebuttal. Thank you. May it please the court. Counsel, my name is Helen Bruner. I'm here to represent the United States in this argument. Let me turn immediately to the question of materiality, because that is, I think, at the heart of the arguments, both with respect to the necessity question and with respect to the Franks question. And there simply is no materiality here. With respect to wiretap number two in the affidavit, in support of that wiretap, and let me start there, there are really two things that counsel is pointing to. The first is the encounter between the confidential informant number two and Mr. Piper that occurred on February 20, 2008, that is not included in the affidavit. And really what happens, there are two things. There is a conversation before, and if one takes a look at the affidavit, it is clear that the conversation concerning source of supply occurs between Piper and CI number two before Nicola Kilcup arrives. And mainly all that occurs is that Mr. Piper indicates he is looking for a new source of supply. The other thing that occurs during that meeting is that Nicola Kilcup arrives and is introduced to CI number two. This, of course, does not mean that the record shows both in affidavit number one and affidavit number two a couple other instances where Nicola arises in the conversations between CI number two and Piper. So it is clear, based on those conversations that are documented in the affidavit, that she is a part of his, that being Piper's, drug transactions and that CI number two is aware of her. It certainly does not suggest that CI number two is able to penetrate this organization enough to get to the suppliers. Counsel also in the briefing has pointed to The organization was really very tight, wasn't it? It was very tight, Your Honor. They had tried pole cameras. They had tried all sorts of things to try and penetrate, right? That is correct. That is well documented in the affidavits. The pole cameras both on Extreme Auto and at the house and the fact that pen registers were used first on Piper's phone and then on Nicola's cell phone as well as toll records. And what is clear from all of that material as set forth in the process, the suppliers, in particular Mr. Bautista, were not identified. So there is no indication that, well, let me rephrase that. This meeting, according to you and apparently from what I've read, was a chance meeting. It wasn't planned, was it? The meeting between Piper and CI number two was planned, but whether Nicola was not planned to be a part of that meeting. That's the question. All right. So essentially counsel for the petitioner would say that every time a chance meeting occurred, it gets recycled and you get to send it back up to the Department. You have to send it back to the Department of Justice. Well, certainly, Your Honor, I would say that we would have, we could have done that in this case. But the question does come back to whether or not it's material, particularly when it was not a secret as to CI number two that Nicola was involved. And in fact, there was another aspect to this and a deal between the fourth confidential informant and Tanford Russell, which Nicola Kilcup was indeed present. So because the entire basis, I shouldn't say the entire, but the focus of affidavit number two was with respect to Nicola Kilcup's phone, there's a great deal of information about what we knew about her involvement and how much CI number two knew about her involvement. But that simply does not get us to the source of supply. And the only other thing that counsel has pointed to, and that is in the affidavit, is the fact that there is a discussion, I believe it's on February, I apologize, Your Honor, I believe it's October 3rd or 27th, I don't remember the exact date, but it is in the affidavit that discusses the fact that the CI was seeking to buy larger quantities and there's some discussion about a possibility of getting Piper's supplier to provide drugs to the CI. But there's no discussion about whether or not the CI is actually going to meet the supplier. And the reason that is important is, quite frankly, the CI is purchasing from Piper. Why would he introduce him to the supplier and cut out his role as the middleman and ability to make money? So there simply is no materiality here. And since there is no materiality, I think that answers the question with respect to the Franks issue as well. I would merely point out that with respect to the 191 pages, the district court actually during the hearing, although the court ultimately denied a Franks hearing, in effect the court at the start of the hearing offered what might well have been considered a Franks hearing. It offered counsel for Mr. Bautista and Mr. Barquette the opportunity to cross-examine Special Agent Korn in order to make its showing to be entitled to a Franks hearing. Quite frankly, I don't know how that could differ. But counsel didn't avail himself of that opportunity and instead relied on the 191 pages that really don't amount to very much of anything. If the court has other questions for me, I'd be happy to answer them. Otherwise, I will rest on the brief and ask the court to affirm the conviction and sentence in this case. Thank you, ma'am. Your Honor, going back to the materiality, we really need to stick with the standard under Ippolito, United States v. Simpson, United States v. Canero, and United States v. Blackmun. The standard is whether or not the confidential informant had the mere potential to penetrate the organization to the supplier level. If you adopt the government's argument, then you are essentially saying that he didn't have that potential, and that's just not borne out by the record. He was the only individual in this investigation who was given the opportunity to meet the supplier. Piper would not have given him that ability to interact with both the supplier and he was also a purchaser, and that was Jody Taylor. So we do have a situation where there is somebody who is interacting with one of the suppliers and is purchasing drugs. And under United States v. Simpson, the court held and rejected the government's claim of materiality. And the court held that it is merely the potential to penetrate. And on the facts of Simpson, it relied on the fact that the confidential informant was trusted and that he was trusted enough to be able to be given the opportunity to meet the other members of the conspiracy. That's all that's clear that the confidential informant was able to meet the supplier. And that's the standard. There is no evidence in the record that he was not able to meet the supplier. And I think that's germane to this court's analysis because we do not have a situation and we do not have a finding. Well, actually, we do have a meet any of the members of the organization. And that was clearly erroneous because that wasn't the case. Supposing that the wiretap application was deficient, didn't the authorities nevertheless have the rely and good faith upon the warrant and the ability to go forward? Well, my argument, Your Honor, is that the good faith exception doesn't apply. How do I get to that if I read U.S. v. Leon and U.S. v. Butts, which Butts makes the good faith exception applicable to electronic surveillance? Yeah, but that was only to the probable cause analysis. Butts did not go on to apply United States v. Leon to the necessity analysis. And so you think what's your best case to suggest it doesn't apply, I guess? My worry was that after reading Butts, I don't know why it wouldn't apply. Well, the court specifically didn't go on to apply the exception in the necessity. Oh, it didn't have it in front of it. But if it had, I don't know why it wouldn't have gone all the way through. Your Honor, I just think that that would be an extension of the law that would go too far. And I think that's your good opinion? No, the circuit hasn't addressed that yet. And so this court would be the first one to address that. And we really need to look at the purposes behind United States v. Leon, and I don't think those would be furthered in the necessity analysis. Okay, thank you very much for your argument. Thank you. Case 09-30335, United States v. Batista, is submitted.
judges: Walter, Rymer, Smith N. R.